**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**JOSEPH M.,[1]**

**Plaintiff,**

**v.**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

**Defendant.**

**Case No. 1:21-cv-2771**
**Magistrate Judge Norah McCann King**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Joseph M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I. PROCEDURAL HISTORY

On December 4, 2018, Plaintiff protectively filed his application for benefits, alleging that he has been disabled since March 8, 2018. R. 98, 108, 203−04. The application was denied

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

initially and upon reconsideration. R. 119−23; 125−27. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 130−31. Administrative Law Judge ("ALJ") Paul Armstrong held a hearing on April 9, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 62−97. In a decision dated May 21, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 8, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 45−56. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on January 21, 2021. R. 1−7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 7, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On June 8, 2021, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

Under the substantial-evidence standard, a court looks to an existing administrative

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B. Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 41 years old on March 8, 2018, his alleged disability onset date. R. 55. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from that date through March 2019. R. 47. However, the ALJ also found that there was a continuous twelve-month period during which Plaintiff had not engaged in substantial gainful activity and the ALJ's remaining findings address that period. R. 48.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, ataxia, diabetes mellitus, headaches, neurocognitive disorder, obesity, and affective and/or anxiety disorder. *Id*. The ALJ also found that Plaintiff's diagnosed sleep apnea and his alleged seizure disorder were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 48−51.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 51−54. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a janitor. R. 54.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as cleaner, a cashier, and a mailer–existed in the national economy and could be performed by Plaintiff. R. 55. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 8, 2018, his alleged

disability onset date, through the date of the decision. R. 56.

Plaintiff disagrees with the ALJ's findings at steps four and five; he also challenges the constitutionality of the appointment of the Commissioner of Social Security and the impact of that appointment on the decision at issue in this case. He asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17.

## IV. DISCUSSION

### A. RFC, Medically Determinable Impairments, and Opinion Evidence

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly consider Plaintiff's seizures, sleep apnea, depression, hyperlipidemia, hemochromatosis, hypertension, and bradycardia; failed to properly evaluate his mental impairments at different stages of the sequential evaluation; and failed to properly consider opinion evidence. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 8−24; *Plaintiff's Reply Brief*, ECF No. 17, pp. 21−31. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the administrative law judge who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554

(3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform light work "except simple, unskilled, SVP 1 or 2, 1-3 step processes, with no work at unprotected heights, around moving machinery, or around open flames and bodies of water." R. 51. In making this determination, the ALJ detailed years of medical evidence including, *inter alia*, Plaintiff's hearing testimony that he experiences "spells" where his hand shakes, but that he was still able to drive, do his own laundry and yard work, walk for approximately one hour, and lift up to fifty pounds; a December 2018 examination conducted by John Amrien, M.D., during which Plaintiff denied experiencing frequent/recurring headaches, dizziness, convulsions, numbness/tingling sensations, stroke, paralysis, concussion, or tremors; Plaintiff's March 2019 presentation to Dr. Amrien with complaints of epileptic seizures; Dr. Amrien's findings on examination showing full range of motion in all areas, with no tenderness, decreased strength, sensory deficit, inflammatory conditions or gait problems, and his psychiatric examination findings showing that Plaintiff's affect was grossly normal with good eye contact; Dr. Amrien's note "that [] the neurologic examination revealed epilepsy and seizure disorder, but this appeared to be based on the claimant's report and no neurological findings were noted"; Plaintiff's July 2019 presentation to an emergency room with reported body tremor/seizures and a reported diagnosis of diabetes mellitus and placement on a long-acting insulin and short-acting

insulin with reported side effects; a CT scan of the head that showed no focal or acute appearing intracranial abnormality and an MRI study of the lumbar spine that showed only mild central spinal canal stenosis at L3-L4; Plaintiff's July 2019 examination by Dennis Graham, D.O., a neurologist, that found that Plaintiff was oriented to person, place, time, and situation, good registration, reasonable recall, and no aphasia, agnosia, or apraxia; Plaintiff's recent and remote memory, thought process and content were intact, and his fund of knowledge was adequate; Plaintiff's unremarkable cranial nerve examination; "[t]hese findings were unchanged from Dr. Graham's earlier examinations"; a normal EEG; Plaintiff's November 2019 presentation to Sameer Patel, M.D., with complaints of seizures, anxiety, and dizziness; findings on examination that Plaintiff was oriented to person, place, and time, and in no distress with normal affect; normal range of motion, no musculoskeletal deformity, no mention that Plaintiff was using a walker or other assistive device; findings on cardiovascular exam that showed normal rate and rhythm and normal pulmonary efforts and breath sounds; findings that Plaintiff's pupils were equal, round, and reactive to light, that an external ear exam was normal, and that his head was normocephalic and atraumatic; Dr. Patel's diagnoses of seizures, hypertriglyceridemia, bradycardia, and anxiety; Plaintiff's November 2019 presentation to the Salem Medical Center because of an accidental needle stick with findings of no gross musculoskeletal abnormalities, no cognitive or functional deficits, and no impaired gait; findings in December 2019 of a steady gait and normal pace without difficulty despite complaints of flank pain; a CT of his abdomen which reflected a partially obstructing kidney stone; Plaintiff's February 2020 return to Dr. Patel with complaints of continued seizures and anxiety; Plaintiff report of three to four episodes of dizziness with some slurred speech per week, but his most recent fall had been a couple of months prior to the visit; findings on physical examination were unremarkable and, despite

Plaintiff's use of a walker during the visit, no need to use a walker to ambulate. R. 51−53. The ALJ went on to explain his RFC determination:

> In sum, the record as a whole, including the overall evidence of record, the medical evidence, the claimant's testimony, the claimant's activities, and other factors described above support some functional limitations. However, they do not fully support claimant's statements regarding the severity or frequency of his symptoms as more supportive of any greater limitations or restrictions than those included in the residual functional capacity set forth in this decision. The undersigned has also determined that the record as a whole does not fully support the claimant's subjective allegations about the disabling nature of his impairment to the extent they are inconsistent with the above-described residual functional capacity. Consequently, there is no basis for finding that the claimant had suffered any other symptoms that would further reduce the residual functional capacity described above at any time through the date of this decision. Accordingly, the claimant retained the residual functional capacity to perform light work, except simple, unskilled, SVP 1 or 2, 1-3 step processes, with no work at unprotected heights, around moving machinery, or around open flames and bodies of water.

R. 54; *see also* R. 53 (considering Plaintiff's obesity with a body mass index of 30.4 and noting that Plaintiff's "obesity, in combination with his other impairments, is reasonably related to the limitation to a reduced range of light work"). In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, argues that the ALJ failed to properly consider his seizure disorder and sleep apnea. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 12−13; *Plaintiff's Reply Brief*, ECF No. 17, pp. 21−23. Turning first to his seizures, at step two of the sequential evaluation, the ALJ considered this condition and found that it was not severe, reasoning as follows:

> The claimant also alleged seizure disorder as a disabling physical impairment. However, the undersigned finds that this is not a medically determinable impairment because there is no evidence in the record of a valid diagnosis by a physician. The record does not reference a diagnosis of seizure disorder, only reports of "spells" of dizziness, tremors, slurred speech, and some loss of control of limbs. The claimant's neurologist diagnosed the claimant with Episodic Familial

> Cerebellar Ataxia Syndrome, which may correspond to “spells” (Exhibit 7F/1). However, objective testing performed, including EEGs and a magnetic resonance imaging (MRI) study of the brain, were unremarkable (Exhibit 1F/38; 2F/1; 6F/2, 7).

R. 48. The ALJ went on to consider Plaintiff’s seizures at step three and when fashioning the RFC at step four. R. 48, 52−54.

Plaintiff contends that the ALJ was mistaken when concluding that there was no evidence of a valid diagnosis in the record, contending that he has been having seizures since he was 10 years old that last one to four hours. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 12 (citing R. 235); *Plaintiff's Reply Brief*, ECF No. 17, p. 21 (same). Plaintiff alleges a number of seizures suffered in 2018 and 2019, and explains how he feels during and after the seizures. *Id*. Plaintiff contends that the ALJ did not properly consider these seizures because, had he done so, the ALJ would have included “limitations in the RFC that would result from the seizure disorder such as time off task or absenteeism.” *Plaintiff's Reply Brief*, ECF No. 17, p. 21. Plaintiff further contends that Dr. Patel included “Seizure Disorder” in his list of Plaintiff’s diagnoses, and that Dr. Amrien found Plaintiff totally and permanently disabled due to seizures. *Id*. (citing R. 362−63).

The Court is not persuaded that this issue requires remand. To the extent that Plaintiff challenges the ALJ’s consideration of the findings/opinions of Drs. Amrien and Patel, the Court explains later in this decision why ALJ’s consideration—or alleged failure to consider—in this regard did not constitute reversible error. Next, in detailing the number and nature of his seizures, Plaintiff relies only on a questionnaire completed by him in March 2019. *See Plaintiff's Memorandum of Law*, ECF No. 15, p. 12 (citing R. 235); *Plaintiff's Reply Brief*, ECF No. 17, p. 21 (same); R. 235 (copy of first page of seizure questionnaire completed by Plaintiff on March 18, 2019). However, as explained in further detail below, the ALJ properly discounted the

intensity, persistence, and limiting effects of Plaintiff's subjective statements that were not supported by the medical record that showed unremarkable objective testing as well as unremarkable physical and mental examinations, Plaintiff's daily activities, and the fact that Plaintiff continued to work for a full year after claiming disability in March 2018. In any event, the ALJ considered Plaintiff's seizures at step four when crafting the RFC determination. R. 51–54. Although Plaintiff insists that the ALJ could not have "properly" considered seizures because the ALJ did not include RFC limitations "that would result from the seizure disorder such as time off task or absenteeism[,]" Plaintiff's contention in this regard is based on simple rank speculation unsupported by any medical opinion. *Plaintiff's Reply Brief*, ECF No. 17, p. 21. As previously discussed, an ALJ need include only "credibly established" limitations, *i.e.*, limitations that are medically supported or otherwise uncontroverted in the record. *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-cv-2115, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record."). For these reasons, the Court is not persuaded that the ALJ's consideration of Plaintiff's alleged seizures requires remand.

Next, the ALJ explained at step two why he did not find Plaintiff's diagnosed sleep apnea a severe impairment: "The claimant was diagnosed with sleep apnea, but there was no sleep study performed and no diagnosis of asthma or chronic obstructive pulmonary disease (COPD) to support this diagnosis." R. 48; *see also* R. 52 (noting that a November 2019 cardiovascular examination revealed that Plaintiff had a "normal rate and rhythm and pulmonary efforts and breath sounds were normal"). Plaintiff, however, insists that he has sleep apnea and that, "[a]s a result, he has daytime drowsiness which *could* affect his ability to concentrate or stay on task (R. 518)." *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 13 (emphasis added); *see also*

*Plaintiff's Reply Brief*, ECF No. 17, pp. 23−24 ("[T]he record reflects that Plaintiff experiences daytime drowsiness after sleep which *could* lead to difficulty staying on task. (R. 538, Pl. Br., p. 13, Def. Br., p. 24).") (emphasis added). Plaintiff's arguments in this regard are not well taken. As with the alleged limitations flowing from seizures, Plaintiff's contention that he "could" have problems concentrating or staying on task is simply speculative. While Plaintiff cites to the record to support his suggested limitation in this regard, one of those cites, R. 518, is simply Dr. Graham's recording of Plaintiff's subjective complaints. *See id*. Notably, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec*., No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). As discussed in more detail below, the ALJ properly discounted the intensity, persistence, and limiting effects of Plaintiff's subjective symptoms. Plaintiff's second, and only other citation to the record, is Dr. Graham's generalized assertion that Plaintiff's sleep apnea, among other things, "compound[s] his medical/neurologic problems." R. 538. In addition to the Court's reasoning, set forth below, agreeing that the ALJ properly discounted Dr. Graham's opinions, Dr. Graham does not specifically opine that Plaintiff's sleep apnea makes it difficult

for Plaintiff to concentrate or stay on task. *See id*. In any event, the ALJ crafted an RFC for "simple, unskilled, SVP 1 or 2, 1-3 step processes" and Plaintiff has not explained why these limitations fail to accommodate any alleged difficulty in concentrating or staying on task. Accordingly, Plaintiff has not shown that the ALJ erred in failing to include any additional RFC limitations related to sleep apnea.

In further challenging the RFC determination, Plaintiff argues that the ALJ failed to consider Plaintiff's depression, hyperlipidemia, hemochromatosis, hypertension, and bradycardia. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 15; *Plaintiff's Reply Brief*, ECF No. 17, pp. 23−24. However, Plaintiff simply points to these diagnoses without identifying any additional functional limitations not already included in the RFC. *See id.*[4] Notably, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec*., 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Additionally, previously discussed, an ALJ must include only "credibly established" limitations in the RFC. *Rutherford*, 399 F.3d at 554; *Grella v. Colvin*, 2014 WL 4437640, at *18.

Plaintiff goes on to challenge the RFC determination by arguing that the ALJ failed to conduct a proper psychiatric review technique ("PRT"), contending that the ALJ erred in considering the criteria for paragraph B related to his mental impairments; in particular, Plaintiff points to the ALJ's finding that Plaintiff had only a mild limitation in his ability to adapt or

[4] Plaintiff also points again to his diagnosis of sleep apnea and, in reply, asserts that his alleged daytime drowsiness "could" lead to difficulty staying on tasking. *See id*. For the reasons already discussed, this argument is unavailing.

manage himself, and argues that the ALJ mischaracterized the evidence when making this finding. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 15−17; *Plaintiff's Reply Brief*, ECF No. 17, pp. 25−26.[5] Plaintiff takes the position that this error at step three infected the ALJ's RFC determination at step four. *Id.*

Plaintiff's arguments are not well taken. As a preliminary matter, the Court notes that Plaintiff relies entirely on his own subjective statements–*i.e.,* his March 2019 function report, hearing testimony, and his own statements to Dr. Graham memorialized in a progress note–that the ALJ properly discounted for the reasons discussed later in this Opinion and Order. In any event, Plaintiff, significantly, does not identify different or additional limitations not already included in the RFC purportedly flowing from an alleged moderate limitation in Plaintiff's ability to adapt or manage himself. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 15−17; *Plaintiff's Reply Brief*, ECF No. 17, pp. 25−26. Plaintiff simply lists this evidence with no substantive discussion of the import of such evidence. The Court will not construct Plaintiff's arguments for him. *See Padgett v. Comm'r of Soc. Sec*., No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

In continuing to challenge the RFC determination, however, Plaintiff also contends that the ALJ erred in his consideration of the medical opinions of Dennis Graham, D.O, and the reviewing state agency consultants, and contends that the ALJ failed to consider the medical

---

[5] Plaintiff does not argue that he met or medically equaled a specific listed impairment at step three; rather, he simply contends that the ALJ erred in considering the criteria for paragraph B related to his mental impairments. *See id.*

opinions of John Amrien, M.D., and Sameer Patel, M.D. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 17−26; *Plaintiff's Reply Brief*, ECF No. 17, pp. 26−31. For the reasons that follow, Plaintiff's arguments are not well taken.

The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all

[6] As previously noted, Plaintiff's claim was filed on December 4, 2018.

medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency'

factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

**1. Dennis Graham, D.O.**

In a letter dated April 9, 2020, addressed "To Whom It May Concern[,]" Dr. Graham, Plaintiff's treating neurologist, stated the following:

> [Plaintiff] was initially evaluated on 9/17/2004 and was last seen on 7/25/2019. His primary diagnosis from a neurologic standpoint is Episodic Familial Cerebellar Ataxia Syndrome. This is a chronic recurrent condition which is difficult to control with medication. He also has underlying Diabetes, Abnormal Lipids, Renal Calculi and Obstructive Sleep Apnea Syndrome all compounding his medical/neurologic problems.
>
> The patient's episodes of Ataxia have increased in frequency and severity as well as duration making it difficult for the patient to continue working. The above diagnoses are chronic, persistent and definitely will impair his functioning abilities on a daily basis. He should be considered permanently disabled.

R. 538.

The ALJ considered Dr. Graham's opinion but found it unpersuasive, reasoning as follows:

> On April 9, 2020, the claimant's treating doctor, Dennis Graham, D.O., submitted a letter stating that he treated the claimant from September 17, 2004 to July 25, 2019 for Episodic Familial Cerebellar Ataxia Syndrome, a chronic recurrent condition, with underlying diabetes, abnormal lipids, renal calculi, and obstructive sleep apnea syndrome, which compound his neurologic problems (Exhibit 7F). Dr. Graham had made similar findings following his examination of the claimant during his most recent visit (Exhibit 6F/3). Dr. Graham stated that the claimant's episodes of Ataxia have increased in frequency, severity, and duration, making it difficult for the claimant to continue working (Exhibit 7F). He stated the diagnosis is chronic, persistent, and will impair the claimant's functioning on a daily basis and the claimant should be considered permanently disabled (Id.). The undersigned finds this opinion not persuasive. First, a determination of disability is an issue reserved for the Commissioner. Additionally, Dr. Graham does not provide any specific information as to how the claimant's diagnosed condition affects his

> functional ability. Dr. Graham's most recent examination notes from July 25, 2019, show the claimant was oriented to person, place, time, and situation, registration was good and recall was reasonable, there was no aphasia, agnosia, or apraxia noted, recent and remote memory were intact, thought process and content were intact, and his fund of knowledge was adequate (Exhibit 6F/2). The claimant's cranial nerve examination was also unremarkable (Id.). These findings were unchanged from Dr. Graham's earlier examinations (Exhibit 6F). EEG signed by Dr. Graham's [sic] was noted to be normal (Exhibit 6F/7). Therefore, the undersigned finds this opinion is not consistent with or supported by the medical evidence, including the doctor's own records, and is not persuasive.

R. 53−54. The ALJ properly noted that an opinion of disability is an issue reserved to the Commissioner. *Louis v. Comm'r Soc. Sec*., 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner."). The ALJ also properly considered the supportability and consistency factors required by the regulations and explained why Dr. Graham's treatment notes and other evidence in the record rendered his opinion unpersuasive, including the ALJ's findings that the opinion did not explain any specific functional limitations on Plaintiff's abilities and that the opinion was inconsistent with other record evidence, including Dr. Graham's own notes. R. 54. The Court finds no error with the ALJ's reasoning in this regard. *See* 20 C.F.R. § 404.1520c(c)(1) (addressing the supportability factor when considering medical opinions); *id*. at § 404.1520c(c)(2) (addressing the consistency factor when considering medical opinions); *Perry v. Saul*, No. 1:19-CV-1923, 2021 WL 1701300, at *17 (M.D. Pa. Apr. 29, 2021) (finding that the ALJ "adequately discussed" the medical opinions and weight assigned to such opinions where, *inter alia*, the ALJ considered an opinion from a treating physician "but she concluded that it had little evidentiary weight due to

the fact that no specific functional limitations were noted"); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *cf. Grella*, 2014 WL 4437640, at *18 ("T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record.").

In challenging the ALJ's consideration of Dr. Graham's opinion in this regard, Plaintiff relies on Dr. Graham's diagnoses of familial episodic cerebellar ataxia, abnormal lipids, recurrent renal calculi, and obstructive sleep apnea syndrome as well as on Plaintiff's own subjective statements made to his physicians as memorialized in progress notes. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 21−22; *Plaintiff's Reply Brief*, ECF No. 17, pp. 26−27. However, for the reasons previously discussed, a diagnosis alone does not establish disability and subjective statements are not transformed into objective findings simply by being recorded in progress notes. *See Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780; *Hatton*, 131 F. App'x at 879; *Morris*, 78 F. App'x at 824–25. In addition, for the reasons detailed below, the ALJ properly discounted Plaintiff's subjective statements.

Plaintiff also insists that Dr. Graham's opinion is consistent with the opinion of Dr. Amrien. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 22; *Plaintiff's Reply Brief*, ECF No. 17, p. 27. However, for the reasons discussed later in this Opinion and Order, this argument is unavailing. In any event, the Court will uphold the ALJ's decision even if contrary evidence exists that supports the opposite conclusion, "as long as the 'substantial evidence' standard is

satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)).

Finally, to the extent that Plaintiff suggests that the ALJ's consideration of Dr. Graham's opinion is defective because this physician is a treating physician and a specialist with a long-time treating relationship with Plaintiff, *see Plaintiff's Memorandum of Law*, ECF No. 15, p. 22; *Plaintiff's Reply Brief*, ECF No. 17, p. 27, that argument is not well taken. For the reasons already discussed, the ALJ properly considered the supportability and consistency of Dr. Graham's opinion. R. 23; 20 C.F.R. § 404.1520c(1)−(2). Although the ALJ did not expressly discuss Dr. Graham's specialty in neurology and the length of his treating relationship with Plaintiff, the ALJ specifically discussed Dr. Graham's opinion and treatment records, R. 53−54 (citing, *inter alia*, 6F, R. 518−32; Exhibit 7F, R. 538), which reflect, *inter alia*, that Dr. Graham is board certified neurologist as well as the length of time that he has treated Plaintiff. In any event, any failure by the ALJ to expressly discuss these factors does not require remand where, as here, a comprehensive review of the record provides substantial support for the ALJ's evaluation of this treating provider's opinion. *See* 20 C.F.R. § 404.1520c(b)(2) (explaining that the factors of supportability and consistency "are the most important factors" and that an ALJ "may, but [is] not required to, explain how" he considered other regulatory factors, including relationship with the claimant, specialization, and other factors); *Jarrett v. Kijakazi*, No. CV 21-1607, 2021 WL 6136936, at *5 (E.D. Pa. Dec. 29, 2021) (finding that the ALJ "satisfied" his regulatory duties when he "explained that the treatment records were only partly consistent with and supportive of" the medical opinion because an ALJ "must only explicitly discuss the two most important factors: consistency and supportability").

For all these reasons, the Court concludes that the ALJ's consideration of Dr. Graham's opinion enjoys substantial support in the record.

**2. State Agency Consultants Joseph Sobelman and Nancy Simpkins[7]**

State agency consultant Joseph Sobelman conducted an initial review of Plaintiff's medical record on April 16, 2019. R. 99−107. Consultant Sobelman opined, *inter alia*, that Plaintiff had no exertional limitations, but could never climb ladders, ropes, or scaffolds and must avoid all hazards. R. 104−05. Plaintiff could have unlimited exposure to fumes, odors, dusts, gases, poor ventilation, etc. R. 105. Under the heading "ASSESSMENT OF VOCATIONAL FACTORS" and the subheading "ASSESSMENT OF THE INDIVIDUAL ABILITY TO PERFORM PAST RELEVANT WORK[,]" Plaintiff's past relevant work was listed as "Custodian." *Id*. Next to the column "Reason No DOT Title / Code Provided[,]" the following statement appeared: "The individual cannot do past work as generally performed in the national economy because the individual is incapable of sustaining a 40-hour workweek." *Id*. In response to the question as to whether Plaintiff could perform his past relevant work, Consultant Sobelman responded "No[,]" explaining that "[t]he *total RFC assessment prevents the clmt from working at heights or around or* [sic] *hazardous machinery. This RFC prevents clmt from performing PRW*." R. 106 (emphasis added); *see also* R. 102 (same). Consultant Sobelman denied that Plaintiff was limited to unskilled work because of his impairments and found that Plaintiff could perform heavy/very heavy work. R. 106. He therefore concluded that Plaintiff was not disabled. *Id.*

---

[7] These state agency consultants' credentials do not appear in the record.

State agency consultant Nancy Simpkins also reviewed the medical record upon reconsideration for the state agency on May 21, 2019. R. 109−17. Consultant Simpkins affirmed Consultant Sobelman's RFC and agreed that Plaintiff was not disabled. R. 112−16.

In his written decision, the ALJ considered these state agency opinions as follows:

> The state agency consultants found the claimant was limited to never climbing ladders, ropes, or scaffolds, and must avoid all hazards (Exhibit 2A, 4A). The undersigned finds this opinion persuasive to the extent it is consistent with the residual functional capacity assessment. The undersigned finds the medical evidence supports the additional limitations to light work with no work at unprotected heights, around moving machinery, or around open flames and bodies of water.

R. 53.

Plaintiff now argues that the RFC (and denial of disability) is inconsistent with the ALJ's reasoning in this regard because the ALJ found these opinions persuasive yet "there is no reflection of any consideration for the Plaintiff's inability to sustain a 40-hour workweek" and there "is no reference to time off task or absenteeism that is clearly indicated by Drs. Sobelman's and Simpkins' opinion that the Plaintiff cannot sustain 40 hours per week." *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 23−24; *see also Plaintiff's Reply Brief*, ECF No. 17, pp. 30−31 (same). Plaintiff contends that, in light of the ALJ's finding that these opinions were persuasive, then "some consideration for this restriction should be reflected in the RFC finding" and the ALJ's failure to do so leaves subsequent reviewers unable to know if this evidence was considered and not credited or was simply ignored. *Id*.

Plaintiff's arguments are not well taken. It is true that the statement next to why Plaintiff could not perform his past relevant work indicated that Plaintiff "is incapable of sustaining a 40-hour workweek." R. 105, 116. However, as detailed above, Consultant Sobelman further explained, and Consultant Simpkins agreed on reconsideration, that Plaintiff could not perform

his past job because the RFC "prevents the clmt from working at heights or around [] hazardous machinery. This RFC prevents clmt from performing PRW." R. 106. Accordingly, a fair reading of their opinions indicates that the state agency consultants–who both ultimately found that Plaintiff was not disabled–opined that Plaintiff could not perform his past relevant work because his non-exertional limitations prevented him from working a full forty hours per week as a custodian. R. 104−06, 114−16. These consultants did not opine that Plaintiff could not perform any 40-hour per week job. *See id*. Accordingly, ALJ's failure to include any time-off task or absenteeism is not inconsistent with his finding that the state agency consultants' opinions were persuasive to the extent that they were consistent with the RFC ultimately found by the ALJ.

**3. John Amrien, M.D.**

On a preprinted prescription form dated December 16, 2019, Plaintiff's treating physician, Dr. Amrien, stated that "Patient is totally and permanently disabled due to seizures." R. 363. The ALJ acknowledged this statement, but rejected it: "On December 16, 2019, the claimant's treating doctor wrote a prescription pad note stating the claimant is totally and permanently disabled due to seizures (Exhibit 4F). A determination of disability is an issue reserved for the Commissioner and therefore the undersigned has not considered this opinion." R. 54.

Plaintiff contends that the ALJ erred in rejecting this opinion, noting that Dr. Amrien also diagnosed Plaintiff with dysarthria, hereditary cerebellar ataxia, hyperlipidemia, hypertension, anxiety, depression, seizure disorder, and ambulatory dysfunction, arguing that the ALJ must consider all this evidence, and insisting that Dr. Amrien's opinion supports Plaintiff's statements and is "consistent with other substantial evidence of record that indicates that the Plaintiff is unable to maintain regular and continuing work function." *Plaintiff's Memorandum of Law*, ECF

No. 15, pp. 24−25 (providing no citation to the record where such "other substantial evidence of record" appears); *see also Plaintiff's Reply Brief*, ECF No. 17, pp. 26−28. Plaintiff's arguments are not well taken. As previously explained, whether Plaintiff can perform occupational functions is a legal determination reserved to the Acting Commissioner. *Louis*, 808 F. App'x at 118; *Zonak*, 290 F. App'x at 497. Moreover, Plaintiff's suggestion that Dr. Ambien's other diagnoses undermine the ALJ's rejection of the doctor's opinion of disability is unavailing. As previously noted, a diagnosis, by itself, does not establish a right to benefits. *Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780. Accordingly, Plaintiff has not persuaded this Court that the ALJ erred in rejecting Dr. Amrien's opinion that Plaintiff is disabled.

**4. Sameer Patel, M.D.**

In a new patient appointment note dated November 14, 2019, Sameer Patel, M.D., another of Plaintiff's treating physicians, noted that Plaintiff presented as a new patient with a history of seizures. R. 541 (reflecting that Plaintiff reported his past medical history as "seizures, anxiety, hypertriglyceridemia, and dizziness, who presents for initial visit. He reports having episodes of dizziness approx 2 times/week, can be related to episodes of stress/anxiety"). Dr. Patel also noted past diagnoses of anxiety and epilepsy. *Id*.

In a letter dated December 11, 2019, and addressed "To Whom It May Concern[,]" Dr. Patel stated that Plaintiff had the following disabilities: vision impaired; hearing impaired; speech impaired; seizure disorder; equilibrium issues; and anxiety. R. 362.

Dr. Patel's progress notes from a follow-up visit on February 13, 2020, reflected as follows:

> Pt has been having 3-4 episodes of dizziness with some slurred speech per week. He had a fall a couple of months ago. *Pt does use a walker*. He has a neurology appt on 02/28/20. Pt is taking fenofibrate, stopped atorvastatin 12/19 as it was

> making him feel unwell. He reports he was seen at SMC since his last visit for kidney stones, states he was able to pass them.

R. 555 (emphasis added). Dr. Patel also recognized past diagnoses of anxiety and epilepsy. *Id*. Upon physical examination, Dr. Patel noted, *inter alia*, that Plaintiff was oriented to person, place, and time, he had a normal affect, and was in no distress. R. 558. Plaintiff's pupils were equal, round, and reactive to light, and extraocular movement was normal. *Id*. Plaintiff's neck had normal range of motion; his cardiovascular rate and rhythm were normal. *Id*. Plaintiff's musculoskeletal examination revealed normal range of motion and exhibited no deformity. *Id*. In his assessment, Dr. Patel stated as follows:

> 1. Seizures (HCC)
> 2. Hypertriglyceridemia
> 3. Gait instability
> 4. Anxiety
> 5. Nephrolithiasis
>
> Pt will cont with acetazolamide, to f/u with neurology. F/U CMP. He will cont with fenofibrate, rpt lipid profile next visit. *To cont with use of walker*, may benefit from outpt PT. Dizziness and occasional slurred speech may be related to seizures. Mood is stable with paroxetine. Will refer to urology if he has reoccurrence of nephrolithiasis. Advised to increase PO fluids.

R. 559 (emphasis added).

Plaintiff complains that the ALJ made no mention of Dr. Patel's diagnoses of seizure disorder, epilepsy, equilibrium issues, anxiety, and vision, hearing, and speech impairments, findings of three to four dizzy episodes with slurred speech each week, falls, and use of a walker, or opinion that Plaintiff was to continue the use of the walker and may benefit from outpatient physical therapy. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 25−26; *Plaintiff's Reply Brief*, ECF No. 17, pp. 29−30. Relatedly, Plaintiff also complains that, although the ALJ acknowledged that Plaintiff used a walker, the ALJ did not ultimately include a walker limitation in the RFC even though there was evidence in the record that supported such a limitation, *i.e.*,

Dr. Patel's opinion that Plaintiff should continue using a walker. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 13−14; *Plaintiff's Reply Brief*, ECF No. 17, pp. 24−25. Plaintiff specifically argues that, had the ALJ properly considered the need for a walker, the ALJ would have found a physical manipulation limitation or a sit/stand option. *Id.*

Plaintiff's arguments are not well taken. As a preliminary matter, to the extent that Plaintiff complains that the ALJ did not expressly discuss Dr. Patel's diagnoses or Dr. Patel's notes containing Plaintiff's subjective statements, this Court has already discussed in this Opinion and Order that a mere diagnosis does not mandate a finding of disability, *see Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780, and that the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion, *Hatton*, 131 F. App'x at 879; *Morris*, 78 F. App'x at 824–25; *Famularo*, 2021 WL 613832, at *7.

With respect to Dr. Patel's references to a walker, as set forth in more detail above, the ALJ considered that Plaintiff used a walker during one visit with Dr. Patel on February 13, 2020. R. 53. However, the ALJ ultimately rejected any finding that suggested that a walker was necessary, highlighting that Plaintiff's "physical examination [conducted by Dr. Patel in February 2020] was unremarkable and did not indicate a need to use a walker to ambulate on exam" and that "the use of a walker was not supported by the physical examination findings, which were unremarkable." R. 53 (citing R. 555−59) (reflecting progress notes from Dr. Patel's examination on February 13, 2020, including, *inter alia*, findings that Plaintiff was oriented to person, place, and time, had a normal affect, and was in no distress; that his pupils were equal, round, and reactive to light, and that his extraocular movement was normal; that his neck had normal range of motion; and that he had a normal range of motion and exhibited no deformity).

Based on this record, the Court cannot say that the ALJ's finding that a walker was unnecessary was not supported by substantial evidence. *See id*.; *see also* R. 52 (reflecting the ALJ's consideration of Dr. Patel's November 2019 progress notes, including, *inter alia*, normal range of motion and no musculoskeletal deformity; the ALJ also noted that Plaintiff "was not noted to be using a walker or other assistive device during this visit" and that Plaintiff's visit to Salem Medical Center on November 27, 2019, reflected "no gross musculoskeletal abnormalities . . . and no cognitive or functional deficits" and the "[a]ssessment at that time noted no falls in last three months and no impaired gait"), 53 (reflecting, *inter alia*, Plaintiff's evaluation at Salem Medical Center in December 2019, which showed, *inter alia*, that his gait was "steady, at a normal pace, without difficulty" and that a CT of his abdomen showed a partially obstructing kidney stone). Although Plaintiff points to evidence that he believes undermines the ALJ's finding, this Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201; *see also Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of Dr. Graham, the state agency consultants, Dr. Amrien, and Dr. Patel.

**B. Subjective Statements**

Plaintiff also challenges the ALJ's consideration of his subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 26−29; *Plaintiff's Reply Brief*, ECF No. 17, p. 31. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. §§ 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller,* 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[8]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 51. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. The ALJ further explained as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because they are not supported by the evidence in the record. Although the claimant alleges disability starting March 2018, he testified he continued to work for a full year, through March 2019. The claimant also testified he is able to continue doing daily activities such as driving, playing computer games, doing his own laundry and the yard work for the home in which he and his father live. The undersigned [sic] that although the claimant was noted to use a walker during his visit on February 13, 2020, the use of a walker was not supported by the physical examination findings, which were unremarkable (Exhibit 8F/17-21). Overall, these findings are not consistent with the claimant's allegations of total disability.

[8]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

R. 53. The ALJ went on to explain as follows:

> In sum, the record as a whole, including the overall evidence of record, the medical evidence, the claimant's testimony, the claimant's activities, and other factors described above support some functional limitations. However, they do not fully support claimant's statements regarding the severity or frequency of his symptoms as more supportive of any greater limitations or restrictions than those included in the residual functional capacity set forth in this decision. The undersigned has also determined that the record as a whole does not fully support the claimant's subjective allegations about the disabling nature of his impairment to the extent they are inconsistent with the above-described residual functional capacity. Consequently, there is no basis for finding that the claimant had suffered any other symptoms that would further reduce the residual functional capacity described above at any time through the date of this decision. Accordingly, the claimant retained the residual functional capacity to perform light work, except simple, unskilled, SVP 1 or 2, 1-3 step processes, with no work at unprotected heights, around moving machinery, or around open flames and bodies of water.

R. 54. In addition, as previously discussed, the ALJ detailed years of medical evidence and record testimony to support his findings. R. 52−54. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, argues that his hearing testimony regarding his spells, falls, and limitations "comport with treating medical evidence" and should have been "properly considered." *Plaintiff's Memorandum of Law*, ECF No. 15, p. 28 (citing R. 317, 518). Plaintiff also argues that the ALJ cherry-picked reports of activity to the exclusion of evidence that supported a finding of disability. *Plaintiff's Reply Brief*, ECF No. 17, p. 31 (citing R. 69, 71, 88, 90−91). Plaintiff specifically points to his testimony that

> he would have dizzy spells three to four times a week and he would get headaches that would affect his motor skills, slur his speech, and cause his whole body to shut down. (R. 69, Pl. Br., p. 28). He would also need someone to help him finish his job and bring him home at night because he could not drive. (R. 71, Pl. Br., p. 28). He felt that he could not keep that job because he was getting older, it was too much on his body, and he was getting sick so regularly that his boss was not going to

> tolerate it much longer. (R. 71, 88, Pl. Br., p. 28). He also fell multiple times at work. (R. 90, Pl. Br., p. 28). In one instance, he fell down at a basketball game when he was cleaning the bleachers. (R. 90, Pl. Br., p. 28). He also fell down while he was in the bathroom shower scrubbing the floor. (R. 91, Pl. Br., p. 28).

*Id.*; *see also Plaintiff's Memorandum of Law*, ECF No. 15, p. 28 (same).

Plaintiff's arguments are not well taken. First, "the treating medical evidence" upon which Plaintiff relies consists simply of his own statements reflected in Dr. Graham's progress notes. *See* R. 317, 518. As previously discussed, the mere memorialization of a claimant's complaints in a medical record will not transform those complaints into objective findings or a medical opinion. *Hatton*, 131 F. App'x at 879; *Morris*, 78 F. App'x at 824–25; *Famularo*, 2021 WL 613832, at *7. Moreover, the Court is not persuaded that the ALJ engaged in prohibited cherry picking when he considered Plaintiff's activities. The ALJ expressly considered Plaintiff's hearing testimony regarding his spells and limitations in walking, R. 51, but, as discussed in more detail above, the ALJ also considered a November 2019 note that Plaintiff had had no falls in the prior three months; Plaintiff's February 2020 report that his most recent fall had been a couple of months prior to the visit; Plaintiff's unremarkable musculoskeletal examinations that showed full range of motion with no tenderness, no musculoskeletal abnormalities, and no impaired gait. R. 52−53. After considering this evidence, the ALJ concluded that Plaintiff's statements were not entirely consistent with the record as a whole for the reasons previously discussed. R. 53−54. As previously noted, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201; *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *cf. Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he

trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints will not serve as a basis for remand of this action. *Id.*

**C. Step Five Determination**

Plaintiff also challenges the ALJ's determination at step five of the sequential evaluation process, arguing that the RFC was inconsistent with the jobs identified by the vocational expert. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 30−32; *Plaintiff's Reply Brief*, ECF No. 17, p. 29. For the reasons that follow, Plaintiff's arguments are not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike in the first four steps of the sequential evaluation process, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205

(3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak,* 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. Moreover, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual

physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the relevant hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 51, 93−95. The vocational expert responded that the jobs of cleaner, cashier, and mail clerk would be appropriate for such an individual. R. 94−95. Plaintiff now challenges this testimony, arguing that the inclusion in the RFC of a limitation to simple, unskilled, SVP 1 or 2, 1−3 step processes is inconsistent with the definitions of the cashier and mail clerk jobs in the Dictionary of Occupational Titles ("DOT"),[9] which require reasoning level 3. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 30−31. However, Plaintiff's counsel never objected to or challenged the vocational expert's testimony in this regard at the administrative hearing. R. 93−97. Plaintiff's current attempt to raise these challenges therefore comes too late and will not serve as a basis for remand of this matter. *See Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."); *Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications

[9] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether there are any jobs that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on the VE's testimony.") (citations omitted); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's challenge to an alleged discrepancy between the vocational expert's testimony and the DOT listings was unexplored during the hearing and later raised by the plaintiff in challenging the ALJ's ruling).

However, even considering the merits of Plaintiff's step five challenge, the Court concludes that the challenge cannot provide a basis for remanding this action. Plaintiff argues that the restriction to work involving "simple, unskilled, SVP 1 or 2, 1−3 step processes" is inconsistent with the DOT definitions for the cashier and mail clerk occupations that require reasoning level 3.[10] *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 31−32. Accepting, only

[10] "The qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." *Zirnsak*, 777 F.3d at 616 (quoting Appendix C, DOT). "GED measures 'those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Id*. "GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. . . . Reasoning levels in the DOT range from level 1 to level 6." *Id*. (citing Appendix C, DOT). GED reasoning level 1 applies "commonsense understanding to carry out simple one- or two-step instructions" in "standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry out detailed but uninvolved written or oral instructions" in "problems involving a few concrete variables in or from standardized situations." *Id*. Reasoning level 3 applies "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id*. "SVP levels, on the other hand, measure the skill level necessary to perform a particular job." *Zirnsak*, 777 F.3d at 616 (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the DOT range from level 1 to level 9" and "[t]he DOT skill levels correspond with the second source of information relied on by the Commissioner: the CFR." *Id*. (citing SSR 00–4p). The CFR categorizes occupations into three classes: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)−(c). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[,]" while "[s]emi-skilled work is work which needs some skills but does not require doing the more complex work duties," and "[s]killed work requires qualifications in which a person uses judgment to determine

for the sake of discussion, Plaintiff's contention in this regard,[11] the job of cleaner, which requires a reasoning level 1, remains and exists in significant numbers in the national economy. R. 55; DICOT 323.687-014; *see also* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in *one* or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.") (emphasis added); *Penrose v. Comm'r*, No. 1:20-CV-00011, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020) ("At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy.").

Plaintiff argues that the job of cleaner should also have been eliminated because the vocational expert testified that a restriction to fumes from cleaning materials would eliminate that job. R. 94−95. Notably, the ALJ's RFC did not include this limitation. R. 51; *see also* R. 53 (finding state agency opinions persuasive to the extent that those opinions did not conflict with the RFC), 105 (state agency opinion finding no restriction in connection with to exposure to fumes), 115 (same). As previously discussed, an ALJ must include only "credibly established" limitations in the RFC. *Rutherford*, 399 F.3d at 554. "'[I]t would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J.

---

the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." *Id*. at § 404.1568(a), (b), (c). "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

[11] The Court simply accepts Plaintiff's position in this regard for the sake of this argument only and does not find or in any way establish a bright-line rule that there is a conflict between a job requiring level 3 reasoning and simple work. *See Zirnsak*, 777 F.3d at 618 ("[T]here is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work.").

May 25, 2017) (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)). The fact that the ALJ also posed to the vocational expert an alternative hypothetical question that contained more limitations than did the RFC actually found by the ALJ is irrelevant when the RFC ultimately found by the ALJ is supported by substantial evidence. *Cf. Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218; *Chrupcala*, 829 F.2d at 1276 ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."). The Court similarly rejects Plaintiff contention regarding a limitation for time-off task. To the extent that Plaintiff insists the ALJ should have included such a limitation, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

Plaintiff further contends that an inability to sustain a 40-hour work week at step five "would result in a significantly eroded occupational base at all exertional levels pursuant to POMS DI 24510.057. Not only does the treating record demonstrate that the Plaintiff cannot sustain a 40 hour work week (R. 363, 538), the State Agency evaluators whom the ALJ relied on also found such a limitation supported by the medical evidence." *Plaintiff's Memorandum of Law*, ECF No. 15, p. 32; *Plaintiff's Reply Brief*, ECF No. 17, p. 32. Plaintiff's arguments are not well taken. This Court has already explained that a fair reading of their opinions reflects that the state agency consultants did not opine that Plaintiff was unable to sustain a 40-hour workweek for any job. Moreover, "[t]hese POMS . . . provisions do not aid [Plaintiff], however, because they lack the force of law and create no judicially-enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007); *see also Burke v. Comm'r of Soc. Sec.*, No. CV 19-

14148, 2020 WL 2989081, at *3 (D.N.J. June 4, 2020) ("[S]tatements in POMS do not have the force of law.").

For all these reasons, Plaintiff has not persuaded this Court that remand is required because of an error at step five.

**D. Constitutionality of Appointment of the Commissioner**

Finally, Plaintiff challenges the constitutionality of the appointment of the Commissioner of Social Security, arguing that, because the appointment violated the separation of powers, the decision denying Plaintiff's application for benefits cannot be upheld. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 32−34; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1−21. This Court, however, recently rejected this argument in a different case:

> The Plaintiff alleges that the Social Security proceedings in their entirety were constitutionally defective because of the appointment of Andrew Saul as Commissioner of the Social Security Administration. (ECF 10 at 31). The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers clause to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF 15 at 36). Plaintiff argues that because of this violation, the appointed ALJ and the Appeals Council did not have constitutional authority to render a decision on Plaintiff's case. (ECF 10 at 32).
>
> While Plaintiff argues to the contrary, the Supreme Court has already stated that there is no basis to conclude that an appropriately appointed official does not have the authority to carry out the functions of the office, even if his or her position was designed by Congress to impermissibly impinge on the President's right to removal at will. *Collins v. Yellen*, —— U.S. ——, 141 S. Ct. 1761, 1787-88, 1788 n.23, 210 L.Ed.2d 432 (2021) (plurality opinion) ("As we have explained, there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of his office.").
>
> > The Appointment Clause cases do not help the shareholders either. These cases also ask whether an officer can lawfully exercise the statutory power of his office at all in light of the rule that an office must be properly appointed before he can legally act as an officer.... Here, "[a]ll the officers who headed the FHFA during the time in question were properly appointed." There is thus no barrier to them exercising power in the first instance.

*Id*. at 1793 (Thomas, J. concurring) (citations omitted).

Similarly, the Court addressed that the idea that the "taint" of the "mere existence" of the offending removal provision flows down through the executive power exercised by the officer was unavailing. *Id*. at 1788, 1793 ("[W]e have not held that a misunderstanding about authority results in a constitutional defect where the action was otherwise lawful.").

The plurality opinion addresses the most pressing issue: that there must be an adequate nexus between the unconstitutional provision and the case at bar. *See id*. at 1779 ("for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of the law that is challenged."). So too do the concurring opinions of Justices Thomas and Kagan: "I write separately because I worry that the Court and the parties have glossed over a fundamental problem with removal-restriction cases such as these: The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract." *Id.* at 1789 (Thomas, J. concurring). Similarly, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." *Id.* at 1802 (Kagan, J. concurring). *See also Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022).

The Court must now consider, then, whether Plaintiff has sufficiently established a concrete injury inflicted by 42 U.S.C. § 902(a)(3) upon Plaintiff through the ALJ's final decision of finding the Plaintiff not disabled and the Appeals Council's denial of review. Without standing, there is no "case or controversy" to be decided. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Plaintiff argues that both the ALJ and the Appeals Council have inflicted the harm of unconstitutional proceedings against Plaintiff and the subsequent denial of benefits. (ECF 10 at 32).

First, the Third Circuit has already expressly stated that "[n]o statutory authority, (the source of the district court's review) authorizes [district courts] to review the Appeals Council decision to deny review," because the Appeals Council exercises "'certiorari-type jurisdiction,'" and renders an ALJ's decision final under the Social Security Act. *Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *10, 2022 U.S. Dist. LEXIS 116234, at * 30 (D.N.J. Jun. 30, 2022); *see also Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Thus, this Court does not have the authority to examine the Appeals Council's decision.

Second, the Plaintiff fails to establish a causal connection between the harm of the ALJ's decision and the impermissible removal provision. As discussed above, and as found by other courts, the mere "taint" of the head of an agency does not establish a sufficient nexus for standing. *See Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *——, 2022 U.S. Dist. LEXIS 116234, at *33-34 (D.N.J. Jun. 30, 2022) (citing *Andino v. Kijakazi*, No. 21-2852, 2022 WL 1135010, at *6-7 (E.D.

Pa. April 18, 2022) ("Justice Alito specified in *Collins* that Seila Law's holding on standing 'does not mean that actions taken by such an officer are void *ab initio* and must be undone.' ... [I]t is not difficult to see that *Collins* requires Andino to demonstrate a nexus between the decision denying her disability benefits and 42 U.S.C. § 902(a)(3)."); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case). As a result, the requisite nexus is not met, and the Court denies Plaintiff's appeal on this ground."); *see also Ford v. Kijakazi*, No. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr. 22, 2022) (denying separation of powers claim because plaintiff failed to show "harm caused by Saul exercising authority he retained by virtue of the unconstitutional removal clause.").

As Justice Kagan noted in *Collins*, for the Court to redress an injury due to an agency decision made by an agency headed by a single executive subject to an impermissible for-cause removal protection, that agency's decision would need to "capture a President's attention." *Collins*, 141 S. Ct. at 1801-02. Justice Kagan specifically noted that the "mass" of Social Security Administration decisions would likely not create a harm that would allow for redress. *Id*. ("[O]nly when the President's inability to fire an agency head affected the complained-of decision. Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.").

Plaintiff points to a statement by President Biden which purports to indicate that President Biden wanted to fire Commissioner Saul. (ECF 16 at 18). Plaintiff points to the below quote in particular to demonstrate that President Biden wanted to fire the Commissioner from the time of the President's inauguration on January 20, 2021:

> Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, terminated the agency's telework policy that was utilized by up to 25 percent of the agency's workforce, not repaired the SSA's relationships with relevant Federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

*Id.*

First, these harms listed in the news article quote are general and do not show the required concrete, personal, and causal harm required to establish standing. To establish standing, "a plaintiff must show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins*, 141 S. Ct. at 1779 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be

> traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id*. (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *see also Kwasnik v. Kijakazi*, No. 21-08537, 2022 WL 2358424, at *11 (D.N.J. Jun. 30, 2022).
>
> Plaintiff does not point to a specific legal application, policy, or decision that the ALJ or Appeals Council rendered that had any effect on this case except for the overall denial of benefits, which as explained above was sufficiently supported by the record. *See Johnson v. Kijakazi*, No. 21-2372, 2022 WL 2342569 at *13, 2022 U.S. Dist. LEXIS 114766 at *36 (E.D. Pa. Jun. 28, 2022) ("Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.") (internal citations omitted). The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid.

*John G. v. Comm'r of Soc. Sec*., No. 1:21-CV-17256-NLH, 2022 WL 3678108, at *10–12 (D.N.J. Aug. 25, 2022). *See also Sheree J. v. Kijakazi*, No. 1:21-CV-05477-NLH, 2022 WL 3211415, at *8–11 (D.N.J. Aug. 9, 2022) (same); *Rebecca L. v. Comm'r of Soc. Sec*., No. 1:21-CV-13848, 2022 WL 3025908, at *13–14 (D.N.J. July 31, 2022) ("Accordingly, Plaintiff has not alleged any connection between the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision denying Plaintiff benefits, and nothing commands us to vacate the decisions below on that ground. . . . Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to remand or reverse the ALJ's decision absent a showing of compensable harm.") (internal quotation marks and citations omitted); *Daniel M. v. Comm'r of Soc. Sec.*, No. CV 21-10533 (RMB), 2022 WL 2952912, at *5–7 (D.N.J. July 26, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision.") (internal quotation marks and citations omitted); *Margaret S. v. Kijakazi*, No. CV 21-13556 (SDW), 2022 WL 2753475, at *8–9 (D.N.J. July 14, 2022) ("Plaintiff has offered no evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal restriction caused the denial of her benefits claim or affected the determination of her benefits in

any way. . . . As such, further consideration from this Court on Plaintiff's 'separation of powers' argument is not necessary. Accordingly, the final decision of the ALJ is not constitutionally defective and remand is not warranted."); *Kwasnik v. Kijakazi*, No. 3:21-CV-08573, 2022 WL 2358424, at *8–11 (D.N.J. June 30, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision."); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case.")). Nothing in Plaintiff's briefing in the instant case persuades this Court that the reasoning in these cases was erroneous. The Court therefore adopts that reasoning and concludes that Plaintiff has not established that remand is appropriate on this basis.

## V. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order rendering final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: November 29, 2022

*s/Norah McCann King*
NORAH McCANN KING
UNITED STATES MAGISTRATE JUDGE